A89A1468. AETNA CASUALTY & SURETY COMPANY v.
ASBERRY.
A89A1469. AETNA CASUALTY & SURETY COMPANY v.
CALFEE.
A89A1470. AETNA CASUALTY & SURETY COMPANY v.
BRANNON.
(388 SE2d 26)

CARLEY, Chief Judge.
Appellant-defendant Aetna Casualty & Surety Company (Aetna) issued an automobile policy to a partnership that was doing business as Chattahoochee Movers. The vehicle covered under the policy was Chattahoochee Movers' 24-foot truck. Appellee-plaintiff John Brannon is a partner in Chattahoochee Movers and appellee-plaintiffs Carl Calfee and Sherman Asberry are employees of the partnership. While Brannon was using the insured truck to drive Asberry and Calfee home after work, the truck stalled. Brannon, who had previously rented a Mustang for his personal use, used that vehicle to continue the trip to Asberry's and Calfee's homes. While doing so, a collision between the Mustang and another vehicle occurred.

As a result of this collision, Brannon, Asberry, and Calfee filed suits against the driver of the other vehicle. Aetna, in its capacity as the uninsured motorist carrier, was served with copies of the complaints. Aetna filed answers in its own name and thereby became a party to the actions. Subsequently, Aetna filed motions for summary judgment, urging that it provided no insurance on the Mustang and no uninsured motorist coverage for the collision. The trial court denied Aetna's motions but certified its orders for immediate review. Aetna's applications for an interlocutory review of the denials of its motions for summary judgment were granted by this court.

1. The relevant language of the uninsured motorist endorsement of Aetna's policy affords coverage to the occupants of "a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction." (Emphasis omitted.) At the time of its breakdown, the insured truck was being used by Brannon to convey Asberry and Calfee to their homes and, at the time of the collision, Brannon was using the Mustang to

accomplish this interrupted task. However, Aetna urges that, as a matter of law, a Mustang cannot be considered to be a "temporary substitute" for a 24-foot truck:

"The purpose of a 'substitution' provision is, of course, to be determined from its own language. But generally, . . . the purpose of a substitution clause is not to narrowly limit or defeat coverage, but to make the coverage reasonably definite as to the vehicle the insured intended normally to use, while at the same time permitting operations to go should the particular vehicle named be temporarily out of commission." *Cotton States Mut. Ins. Co. v. Lee*, 119 Ga. App. 293, 294 (1) (166 SE2d 907) (1969). There is no language in the uninsured motorist endorsement of Aetna's policy requiring that a "temporary substitute" be exactly or even remotely similar in design or model to the covered vehicle. Likewise, there is no language in the endorsement of the policy which would lead a reasonable insured to conclude that a "temporary substitute" must be capable of temporarily fulfilling every possible use or even the primary use to which the insured vehicle would be put. "One of the basic elements of a 'substitution' provision is that the auto claimed to be covered is actually used as a 'substitute' for the described automobile, and it is necessary that there be *at least a reasonable similarity between the use made of the original car and the allegedly substituted car.* Thus it must be shown that . . . *the described vehicle would have been used for the trip on which the accident occurred.* A substitute automobile within the meaning of the substitute automobile policy clause is one *actually, but only temporarily, used in place of the specified automobile.* That is, *for the same use the insured car would have been used* except for its withdrawal from all normal use because of its breakdown, repair, servicing, loss, or destruction." (Emphasis supplied.) 12 Couch on Insurance 2d (Rev. ed.), § 45:232, p. 528 (1981).

There was more than a mere "reasonable similarity" between Brannon's original use of the insured truck and his subsequent use of the Mustang. There was a total identity as between those uses. But for the mechanical failure of the insured truck, Brannon would have been using that vehicle at the time of the collision for the purpose of conveying Asberry and Calfee to their homes. Thus, at the time of the collision, the Mustang was actually, but only temporarily, being used by Brannon as a substitute for the disabled insured truck. Under these circumstances and the language of the uninsured motorist endorsement of Aetna's policy, the trial court did not err in failing to hold that, as a matter of law, the Mustang could not be found to be a "temporary substitute" for the insured truck.

2. Aetna's policy contains a general endorsement which provides that "[t]his insurance does not apply to an auto owned by any of [Chattahoochee Movers'] partners or members of their households."

(Emphasis omitted.) Relying upon this provision, Aetna urges that, even if a Mustang can otherwise be found to be a "temporary substitute" for a 24-foot truck, this particular Mustang, which had been rented by Brannon for his own personal use, nevertheless cannot qualify for consideration as a "temporary substitute."

We need not decide whether the cited language would constitute an unenforceable exclusion of such uninsured motorist coverage as is required to be provided in an automobile policy issued in this State. See generally *Doe v. Rampley*, 256 Ga. 575 (351 SE2d 205) (1987). Even assuming the underlying enforceability of the exclusion, it nevertheless has no applicability under the facts of this case. The provision purports to exclude coverage for any vehicle "owned" by the partners of Chattahoochee Movers. The Mustang was not "owned" by Brannon. It was leased by him. The provision does not purport to exclude coverage under the policy for any vehicle "leased" by the partners of Chattahoochee Movers. "Any exclusion sought to be invoked by the insurer . . . will be liberally construed in favor of the insured and strictly construed against the insurer unless same is clear and unequivocal. [Cits.]" *Travelers Indem. Co. v. Whalley Constr. Co.*, 160 Ga. App. 438, 441 (287 SE2d 226) (1981).

As discussed in Division 1, uninsured motorist coverage under Aetna's policy would otherwise be afforded to Brannon, Asberry and Calfee in their capacities as the occupants of a rental Mustang which was being used at the time of the collision as a temporary substitute for the insured truck. The existence of that uninsured motorist coverage would in no way be vitiated by a general exclusion for vehicles "owned" by partners of Chattahoochee Movers.

*Judgments affirmed. McMurray, P. J., and Beasley, J., concur.*

DECIDED NOVEMBER 6, 1989.

*Long, Weinberg, Ansley & Wheeler, Barry S. Mittenthal, Stephanie F. Goff*, for appellant.

*James E. Thompson, Rowe & McGarity, William P. Rowe III, Mozley, Finlayson & Loggins, D. Keith Calhoun*, for appellees.